EMMA DE BEUKELAER, IMP'D WITH, ETC.,

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Contempt—Excessive Punishment—Custody of Child—Habeas Corpus—Practice—Appeal—Joinder in Error—Waiver.*

1.   In punishing for a contempt the court should have regard solely to the maintenance of its power and dignity, and the prevention of unlawful interference with the due administration of justice.

2.   Where a defendant, in a *habeas corpus* proceeding to determine the right to the custody of a child, and her physician, have removed a birthmark from the child, in order to destroy evidence of identity, a sentence for contempt of court, imposing a fine of $500 upon each, with imprisonment in the county jail for a term of thirty days, is excessive.

3.   It *seems* that a joinder in error is a waiver of the objection that the case is brought before this court by appeal instead of by writ of error.

[Opinion filed March 28, 1888.]

APPEAL from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding.

Messrs. JOHN LYLE KING and WOLFORD N. LOW, for appellant.

De Beukelaer v. The People.

Mr. Allan C. Story, for appellees.

Bailey, J. In this case William H. Burt and Emma De Beukelaer were convicted in the court below for contempt of court, and were each sentenced to imprisonment in the county jail for the term of thirty days, and to pay a fine of $500. Both the defendants entered their exceptions and prayed an appeal to this court, but it does not appear from the record proper that their prayer in that behalf was granted. The bill of exceptions recites the granting of an appeal, but whether any or what bond was required is not stated. Defendant, Emma De Beukelaer, filed her appeal bond in the penal sum of $2,000, and upon the appeal thus perfected, as we may presume, the record was brought to this court. Both of the defendants have appeared and assigned errors upon the record, and the counsel for the prosecution having argued the errors thus assigned upon their merits, his doing so must, under our practice, be held to be tantamount to a formal joinder in error. It thus becomes unnecessary for us to decide whether the appeal was properly perfected, or whether the case, being strictly a criminal proceeding, could have been brought to this court by appeal. See Ingraham v. People, 94 Ill. 428, where it is held that, under the statute, appeals do not lie in criminal cases. But the defendants having filed the record in this court and assigned errors thereon and the people having joined in error, the case may be treated as being here on writ of error, and the attempt of one of the defendants, which is apparently irregular, to bring the record here by appeal, may be wholly disregarded.

The defendants' counsel have argued the case on behalf of Emma De Beukelaer alone, and no brief appears to have been filed for the other defendant, and it seems, therefore, to be assumed on both sides that defendant Burt is not before this court. This, we think, is a misapprehension. As both defendants have assigned errors, both are here, and we can not escape the duty of adjudicating upon the errors as to both.

The alleged contempt of court for which the defendants have been convicted, was committed in the course of a *habeas*

*corpus* proceeding brought to determine the right to the custody of an infant male child four and one-half years old, known as Edward De Beukelaer. The relator in the petition for a *habeas corpus* was one Carrie Andrews, who represented in her petition that said child was her son, born out of wedlock; that when said child was a year and a half old she placed him in the custody of one Lillie McWilliams, who resided a short distance from Chicago, and who desired to take an infant with the view of adopting him; that the relator agreed with said Lillie McWilliams to give her the custody of said child on trial for two weeks, and if she should be satisfied with him and she and the relator should then so agree, the child should have a home with her, but if not, that the child should be returned to the relator at the end of the two weeks; that the petitioner thereupon placed said child in the custody of said Lillie McWilliams, and on the second day thereafter received a note from her saying that she was about to move away but giving no indication as to what disposition she intended to make of the child; that the relator, though making diligent search and expending large sums of money, was unable to obtain any tidings of said child until a few weeks before the commencement of the *habeas corpus* proceedings, when she first learned that he was in the custody of defendant, Emma De Beukelaer.

The defendant, by her return to said writ of *habeas corpus*, denied that the relator was the mother of said child, and alleged that, if she was his mother, she had renounced and surrendered her maternal right to him; that, a few days after the relator claims to have placed said child in the custody of said Lillie McWilliams, the defendant found him, abandoned and forsaken, and that he was then a foundling, and that, as such foundling, he was adjudicated by the County Court to be the adopted child and to bear the name of the defendant; that the relator, by reason of her character and immoral associations, was unfit, and, for want of means, unable to care for said child so as to secure his welfare and best interests, and that the continuance of the custody of said child by the defendant, and the continuance of said adoptive relation, would pro-

mote and secure the best interests, well-being and comfort of said child, both then and thereafter; that since said adoption there existed between the defendant and said child the mutual and reciprocal affections usual to the natural relation of parent and child, and that the defendant had abundant means to provide for and educate said child, and prepare him for a respectable position and business in life.

After the child had been produced by the defendant on said writ of *habeas corpus*, and the matters arising upon said writ had been partly heard, the further hearing was postponed to a subsequent day, the child in the meantime remaining in the defendant's custody. During that interval the defendant, Emma De Beukelaer, obtained the services of defendant Burt, who is a physician and surgeon, and who, at her request, by a surgical operation, removed from one of the child's hips a mole, or birth-mark, about half an inch in diameter. It is admitted that the purpose of said Emma De Beukelaer, in having said operation performed, was to obliterate a mark by which alone, as she supposed, the identity of the child could be established. She states, in her testimony, that she was induced to have it performed by her great love for the child and by her fear that he was about to be taken from her. Defendant Burt admits that she expressed to him that she wished to have the mark removed for the purpose of obliterating proof of identity of the child, and of preventing certain parties, who were seeking to get him away from her, from establishing his identity, but he denies that he was aware of the pendency of the *habeas corpus* proceeding, though he seems to have been aware of the pendency of some legal proceedings in which the identity of the child was to be attempted to be established by evidence.

It is argued that the act of the defendants, though censurable and perhaps criminal, was not a contempt of court, and was not punishable as such. It is true it was not committed in the presence of the court, but it was an interference with the administration of justice by obliterating and destroying important and material evidence in a matter pending before the court. Whether this constituted a contempt or not we do not

deem it necessary to decide, as we prefer to place the decision of the case upon another ground. Perhaps the strongest consideration in favor of regarding it as a contempt is that it was an unwarrantable interference with the person of a prisoner held by the court under its writ of *habeas corpus*, and who, while so held, was, in contemplation of law, in the personal custody of the court.

But admitting that the defendants' act was a contempt, we are of the opinion that the punishment inflicted by the court was, in view of all circumstances, unusual and immoderate. The act, though censurable, was not without some palliation. Defendant, Emma De Beukelaer, claims to have entertained a very great affection for the child and to have been impelled to do the act complained of by her great fear of being separated from the object of her affection. But, even if there were no such palliation, the punishment imposed on each of the defendants, viz.: imprisonment for thirty days and a fine of $500, strikes the mind at first blush as disproportionate to the offense committed. It should be remembered that courts in punishing for contempt should have regard solely to the maintenance of the power and dignity of the court, and the prevention of unlawful interference with the due administration of justice. It is plain that considerations based upon the barbarity or inhumanity of the act committed do not come within those limits. If the defendants' act was an unnecessary and cruel surgical operation upon the person of said child, it was punishable as a criminal assault, and in a proceeding for the offense the defendants would have been entitled to a trial by jury. The punishment of offenses against the criminal law should be left to the criminal courts, and in punishing for contempts, a court should look at the demerits of the acts complained of only so far as they affect the power and dignity of the court and the due administration of justice therein.

We can not but conclude that the court below, in fixing the measure of punishment, was influenced to a considerable degree by a very natural feeling of indignation at the unnecessary cruelty of the defendants toward the defenseless child. Their cruelty, as such, was punishable, if at all, in another forum.

So far, and so far only, as their act was an offense against the administration of justice, was it punishable in this proceeding.

For the reason that the punishment imposed was excessive the conviction as to both defendants will be reversed and the cause remanded.

*Judgment reversed.*